**Clyde Dene MILES, Plaintiff–Appellee**

v.

**Steven RICH, also known as Stevin Rich; Gideon Daniel, also known as Gideon A. Daniels; Gene A. Kroll, Assistant Warden; Keith E. Gorsuch, Major, Defendants–Appellants.**

No. 13–40427
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 31, 2014.

Clyde Dene Miles, Beaumont, TX, pro se.

Nadine Felicia Phillpotts, Assistant Attorney General, Office of the Attorney General, Austin, TX, for Defendants–Appellants.

Before REAVLEY, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM: *

Clyde Dene Miles, Texas prisoner # 1275133, alleged under 42 U.S.C. § 1983 that the defendants were deliberately indifferent to his medical needs. He sought damages and injunctive and declaratory relief. The defendants moved for summary judgment, arguing that they were

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

entitled to qualified immunity; that Miles failed to exhaust his administrative remedies; that the Eleventh Amendment barred Miles's claims for money damages; and that injunctive and/or declaratory relief was not appropriate. The magistrate judge recommended granting the motion with respect to the Eleventh Amendment immunity claim to the extent that Miles sued the defendants in their official capacities and denying the motion in all other respects. The district court adopted the magistrate judge's report and recommendation. The defendants now appeal. We AFFIRM.

Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from civil liability for damages if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *See Flores v. City of Palacios,* 381 F.3d 391, 393–94 (2004). The test for qualified immunity is twofold: (1) "whether the plaintiff has alleged a violation of a clearly established constitutional right;" and (2) "whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 755 (5th Cir.2001) (internal quotation marks and citation omitted).

In this is interlocutory appeal from the denial of qualified immunity, our jurisdiction is limited. We may not review the district court's conclusion that sufficient evidence supports a finding that the defendants engaged in a certain course of conduct. *See Kinney v. Weaver,* 367 F.3d 337, 346 (5th Cir.2004) (en banc). Instead, we may review only "the purely legal question whether a given course of conduct would be objectively unreasonable in light of clearly established law." *Id.*

At the summary judgment stage, "the plaintiff can no longer rest on the pleadings ... and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [test for qualified immunity.]" *Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996). "Consequently, the court must highlight evidence that, if interpreted in the light most favorable to the plaintiffs, identifies conduct by the defendant that violated clearly established law." *Castillo v. City of Weslaco,* 369 F.3d 504, 506 (5th Cir.2004). Ordinarily, the district court in denying the motion for summary judgment "will outline 'the factual scenario it believes emerges from viewing the summary judgment evidence in the light most favorable' to the plaintiff" and "highlight the evidence in the record supporting its conclusions." *Id.* at 507 (citation omitted).

Here, the defendants argue that the district court did not set out the facts that it assumed to be true. Although it is true that the district court did not discuss the assumed facts with specificity, we need not order a limited remand for further explication, as the district court's reasoning is sufficiently clear. *See id.* The district court based its ruling on Miles's assertion that he was denied appointments with specialists for his knee problem, a knee replacement surgery, the use of his walker, and adequate pain medication for a year or more.

In order to establish an Eighth Amendment claim for deliberate indifference to medical needs, a prisoner must show that prison officials knew of and disregarded an excessive risk to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825,

837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). It is not enough to show mere negligence, medical malpractice, or a disagreement with one's medical treatment. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir.2006). The prisoner must show that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino*, 239 F.3d at 756 (citation omitted). Delay in medical care may violate the constitution if there has been deliberate indifference resulting in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993).

In the instant case, Miles supported his deliberate indifference claim with assertions in his verified complaint and copies of his many grievances and sick call requests complaining about his alleged lack of medical care. *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir.2003) (factual assertions in prisoner's verified complaint made under penalty of perjury constitute competent summary judgment evidence). On the defendants' appeal from the denial of qualified immunity, we must accept Miles's version of the facts as true. *See Kinney*, 367 F.3d at 348.

According to his evidence, Miles began experiencing knee problems while incarcerated in 2007. An orthopedic doctor subsequently told him that he needed knee replacement surgery. He claims, however, that despite his repeated requests the surgery and adequate treatment and medication have been denied or delayed. He claims that he was given a walker in 2008 to assist with mobility but that in November 2009 defendant King took the walker away contrary to his medical needs. King and defendant Daniel refused to give the walker back until October 2010 when a doctor reviewed Miles's medical records

and ordered its return. Meanwhile, according to Miles, without the use of the walker he suffered numerous falls, additional injury, and increased pain, all of which was reported to prison officials in grievances and sick call requests.

Miles further alleged that he was prevented from seeing orthopedic specialists for consults and x-rays on several occasions in 2010 and 2011 because the defendants failed to have security escort him to his medical appointments. As a result, Miles was listed as a "no show," the appointments were canceled, and Miles experienced continued and prolonged pain and suffering. The canceled appointments caused long delays in receiving treatment because it often took up to three months to reschedule a new appointment. Finally, Miles alleged that he must not take pain medications that may cause harm to his liver because he has hepatitis C, yet defendant Daniel prescribed pain medication that was "hard on his liver" rather than appropriate and otherwise available medication. Miles also alleged that he personally spoke with defendants Warden Kroll and Major Gorsuch and that he wrote to Warden Rich about his medical care problems but to no avail.

The defendants argue on appeal that Miles has alleged only negligence or a disagreement with his medical treatment. In support of their summary judgment motion in the district court, the defendants submitted only copies of Miles's grievances rather than his medical records. The prison responses to the grievances do indicate that Miles was medically evaluated on numerous occasions, that he received x-rays more than once, and that he was prescribed various pain medications, but the responses do not conclusively resolve questions about Miles's treatment.

Miles also submitted copies of the grievances, which he incorporated by reference

into his complaint. The grievances show that on multiple occasions he complained about an alleged lack of medical treatment, alleged delays in treatment, the absence of his walker, and the need for different medication. Indeed, Miles filed more than twenty Step 1 grievances and at least eight Step 2 grievances. However, the defendants never offered Miles's actual medical records or any affidavits showing Miles's treatment and the opinions of the medical professionals to contradict Miles's factual assertions. Furthermore, although some of the grievance responses explain that Miles missed various medical appointments because the prison was on lockdown, there is no explanation for other missed appointments. Nor do the grievance responses contradict Miles's claim that he needed knee surgery or that the medication he was given was inappropriate in light of his hepatitis. One grievance response does indicate that Miles's walker was taken away after King's alleged medical evaluation, which could support the defendants' assertion that Miles merely disagrees with the defendants' assessment of his medical needs. Yet, the defendants never offered a copy of King's purported evaluation, and a doctor later ordered the walker to be returned upon reviewing the medical records.

In short, as it currently stands, the record before us shows there are fact issues concerning Miles's need for the walker, alleged injuries suffered without the walker, the reason for the missed or delayed medical appointments, the availability of allegedly proper medication, and the absence of knee surgery. Because we may not review the existence of these fact issues and must view them in the light most favorable to Miles, we conclude that the record does not establish that the defendants are entitled to qualified immunity because, if proven, the facts could show that the defendants were deliberately in-

different to Miles's serious medical needs. *See Domino*, 239 F.3d at 756.

This is not to say that qualified immunity may not ultimately defeat Miles's claims, as the ultimate resolution of the factual disputes may show that the defendants are qualifiedly immune from liability. *See Kinney*, 367 F.3d at 346 n. 8. But on this record we cannot say that the district court erroneously assessed the legal significance of the defendants' conduct. *Id.* at 348.

AFFIRMED.