# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60246

United States Court of Appeals
Fifth Circuit

**FILED**

November 19, 2018

Lyle W. Cayce
Clerk

THAD EVERETT DELAUGHTER,

　　　　Plaintiff - Appellant

v.

RONALD WOODALL; MICHAEL HATTEN; STATE OF MISSISSIPPI,

　　　　Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before HAYNES, HO, and DUNCAN, Circuit Judges.

HAYNES, Circuit Judge:

Thad Everett Delaughter claims the defendants violated his Eighth Amendment rights by failing to provide medically necessary hip replacement and reconstructive surgery. Delaughter filed suit under 42 U.S.C. § 1983 against Michael Hatten, medical administrator at South Mississippi Correctional Institution, and Dr. Ronald Woodall, who works for Wexford Health Services, a medical services contractor for the Mississippi Department of Corrections ("MDOC").[1] Delaughter sought an injunction to obtain the

---

[1] Delaughter also filed suit against Wexford Health Services, Christopher Epps, Johnny Denmark, and the State of Mississippi. Delaughter voluntarily dismissed the first

No. 16-60246

surgery and damages for his pain and suffering. The district court[2] granted summary judgment in favor of both defendants.

On appeal, Delaughter argues the district court (1) improperly granted summary judgment in favor of Hatten based on sovereign and qualified immunity; (2) improperly concluded there was no genuine dispute of material fact as to whether Dr. Woodall was deliberately indifferent to Delaughter's medical needs; and (3) abused its discretion in denying Delaughter's motions to appoint counsel.[3]  For the reasons set forth below, we AFFIRM in part, REVERSE in part, VACATE in part, and REMAND.

## I. Factual and Procedural Background

Delaughter suffers from rheumatoid arthritis and had hip replacement surgery in 1992, prior to his incarceration.  In 2010, Delaughter began

---

three defendants, and the district court granted summary judgment for Mississippi. Delaughter appeals only Hatten's and Dr. Woodall's dismissals.

[2] The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. We will refer to the magistrate judge's decisions as decisions from the district court.

[3] We also address three motions that have been carried with the case. First, before Delaughter was appointed appellate counsel, he moved for leave to file an untimely reply brief. This motion was never filed because Delaughter failed to seek leave of the court. Because a supplemental briefing schedule was set after Delaughter was appointed counsel, we need not address the unfiled motion issue as it would be moot in any event. Second, Delaughter filed a motion for injunctive relief pending appeal. Because we have resolved the merits of Delaughter's appeal, we deny his motion as moot. *See* FED. R. APP. P. 8(a)(1)(C). Finally, Hatten filed a motion to supplement the record with additional, subsequent medical records. Generally, we will not expand the record on appeal. *See McIntosh v. Partridge*, 540 F.3d 315, 327 (5th Cir. 2008). Here, Delaughter (confusingly) in his pro se response did not oppose the motion. But he indicated his lack of opposition was based upon the belief that the medical records support his claim that he requires surgery. Otherwise, he challenges the content of the proposed supplemental material and Hatten's characterization of the material, alleging that the records reflect a miscommunication between the treating physician and himself and disputing that the records show Delaughter is the cause of the delay. (Additionally, oral argument drew out additional factual developments that should be explored by the district court.) Because of this factual dispute, along with other factual disputes discussed later in this opinion, it is improper to expand the record here. *See Trinity Indus., Inc. v. Martin*, 963 F.2d 795, 799 (5th Cir. 1992). Deciding disputed facts is not the office of a court of review. Thus, we deny Hatten's motion to supplement the record.

2

experiencing hip pain while incarcerated. Between November 2010 and March 2011, Dr. Woodall treated Delaughter with pain medication and steroid injections on at least four separate occasions. According to Delaughter, Dr. Woodall repeatedly assured Delaughter he would refer Delaughter to a specialist, but no appointment was scheduled. Dr. Woodall asserts that he has authority only to request referrals but not to schedule specialty consultations, and that he put in such a request in June 2011. Delaughter eventually asked Hatten to arrange a specialty consultation, and claims it was Hatten who scheduled an appointment with Dr. Elliot Nipper, an orthopedic specialist.

Delaughter first saw Dr. Nipper in the summer of 2011. Dr. Nipper determined that Delaughter required hip replacement and reconstructive surgery. Delaughter alleges this surgery was scheduled with Dr. Nipper for October 2011, but the surgery was cancelled shortly before it was to occur. Hatten claims Dr. Nipper cancelled the surgery but does not explain why Dr. Nipper did so; Delaughter claims Dr. Nipper told him that "they are simply not going to pay for [the surgery]."

It is unclear what, if any, steps were taken regarding Delaughter's surgery between the fall of 2011 and 2013. In February and August 2013, Dr. Woodall requested that Delaughter see an outside specialist, and Delaughter saw Dr. Nipper again in September 2013. Dr. Nipper then requested that MDOC refer Delaughter to the University of Mississippi Medical Center ("UMMC") for surgery. MDOC claims that UMMC refused to accept Delaughter as a patient but that, at least as of 2015, MDOC continued to discuss surgery with UMMC. Delaughter's medical records reflect that Dr. Woodall continued to treat Delaughter with medication and steroid injections

at least until 2015.[4] But Delaughter has yet to receive hip replacement and reconstructive surgery.

Based on the delay in surgery, Delaughter filed suit under 42 U.S.C. § 1983 and the district court allowed him to proceed pro se *in forma pauperis*. Delaughter alleged that Hatten and Woodall violated his Eighth Amendment rights by acting with deliberate indifference toward his medical needs. He sought injunctive relief to obtain the hip surgery and damages for pain and suffering. Delaughter twice moved for appointment of counsel, but his motions were denied. Hatten and Woodall then filed separate motions for summary judgment, and the district court granted both. It held that Hatten was entitled to sovereign immunity for claims against him in his official capacity and qualified immunity for claims against him in his individual capacity, thus rendering him wholly immune from suit. It also held that Delaughter had failed to create a genuine issue of material fact about whether Dr. Woodall was deliberately indifferent to Delaughter's medical needs. Delaughter timely appealed and was appointed pro bono counsel on appeal.

## II. Standard of Review

We review a grant of summary judgment de novo, applying the same standard as the district court. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The facts are construed in the non-movant's favor. *Cass*, 814 F.3d at 728.

---

[4] In 2015, Delaughter was transferred to a different prison where Dr. Woodall alleges (and Delaughter raises no evidence to the contrary) that he does not see patients.

We review the denial of a motion to appoint counsel for abuse of discretion. *Jackson v. Dall. Police Dep't*, 811 F.2d 260, 261 (5th Cir. 1986) (per curiam).

## III.  Discussion

### A.  Claim against Dr. Ronald Woodall

Delaughter argues that Dr. Woodall was deliberately indifferent to his medical needs because Dr. Woodall knows Delaughter requires surgery but has not received it; thus, the district court erroneously granted summary judgment in Dr. Woodall's favor.

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Mendoza,* 989 F.2d at 195. In contrast, "an inadvertent failure to provide adequate medical care" does not violate the Eighth Amendment. *Estelle*, 429 U.S. at 106. Thus, mere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment, negligence, or medical malpractice. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam).

The district court properly granted summary judgment in Dr. Woodall's favor because there is no evidence that Dr. Woodall failed to take reasonable measures to abate a substantial risk of serious harm to Delaughter. The record supports Dr. Woodall's assertion that he has no authority to authorize, schedule, or pay for Delaughter's surgery. The record includes Dr. Woodall's unrebutted affidavit in which he states that he is neither equipped nor authorized to perform surgery, nor can he schedule, authorize, or arrange for off-site surgery. Since the lack of surgery is the only claimed "deliberate indifference," and this is out of Dr. Woodall's hands, we conclude that Delaughter did not raise a fact issue sufficient to defeat summary judgment. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Therefore, we affirm the district court's grant of summary judgment in Dr. Woodall's favor.

## B.  Claims against Michael Hatten

### 1.  Sovereign Immunity

Delaughter argues the district court erroneously concluded that Hatten was entitled to sovereign immunity from Delaughter's injunctive claims against Hatten in his official capacity. Because the district court failed to address the *Ex parte Young*[5] exception to sovereign immunity for claims for prospective injunctive relief, we agree that the injunctive relief claim should be remanded.

"The Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law." *Warnock v. Pecos Cty.,* 88 F.3d 341, 343 (5th Cir. 1996) (citing, *inter alia, Ex parte Young*, 209 U.S. 123, 155–56 (1908)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to

---

[5] *Ex parte Young,* 209 U.S. 123 (1908).

suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alterations in the original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 266 (1997)); *Air Evac EMS Inc. v. Tex. Dep't of Ins., Div. of Workers Comp.*, 851 F.3d 507, 515–16 (5th Cir. 2017). It is not a merits inquiry. *Verizon Md., Inc.*, 535 U.S. at 646.

Liberally construing Delaughter's pro se complaint, *see Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008), he alleges an ongoing violation of federal law and seeks prospective injunctive relief; Delaughter claims that defendants violated his Eighth Amendment rights by failing to provide required hip surgery and requested in his prayer for relief that he "receive the surgery that [he] need[s]." This straightforward inquiry indicates the *Ex parte Young* exception applies here, so, by failing to consider the *Ex parte Young* exception, the district court incorrectly determined it lacked power to grant an injunction. Because the district court did not reach whether equitable relief was proper, we do not address that question here, and instead remand so the district court can consider the issue in the first instance.[6]

### 2. Qualified Immunity

Delaughter argues the district court incorrectly determined that Hatten in his individual capacity was entitled to qualified immunity because Delaughter established that Hatten unjustifiably delayed required surgery,

---

[6] Hatten claims that the district court was not required to undertake an *Ex parte Young* analysis because it concluded that Delaughter failed to establish a deliberate indifference claim; thus, there was no ongoing violation of federal law. Given our disposition of this merits issue (that fact issues exist regarding an Eighth Amendment violation), that argument fails.

and it is clearly established that prison officials violate the Eighth Amendment by doing so.

Because Hatten invoked qualified immunity, Delaughter has the burden to demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Cass*, 814 F.3d at 728. We address each prong in turn.

### a. Violation of a Constitutional Right

As noted above, delay in medical care constitutes deliberate indifference in violation of the Eighth Amendment if a prison official disregards a substantial risk of serious harm by failing to take reasonable measures to abate it, and the delay results in substantial harm. *Mendoza,* 989 F.2d at 195. But a mere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment, negligence, or medical malpractice. *Varnado,* 920 F.2d at 321.

Hatten argues that Delaughter's surgery has been delayed only because Dr. Nipper cancelled the surgery and UMMC refused to accept Delaughter as a patient. Because he contends that these are medical-judgment decisions, Hatten concludes that the delay in surgery does not constitute deliberate indifference and the district court properly granted summary judgment in his favor. We disagree.

First, we have previously found that claims like Delaughter's do not constitute "mere disagreement with one's medical treatment." *See Easter*, 467 F.3d at 463–64 (affirming the district court's denial of summary judgment where a prisoner brought claims that a prison nurse refused to provide nitroglycerin for chest pain—the set course of treatment for chest pain); *see also Lawson v. Dall. Cty.*, 286 F.3d 257, 263 (5th Cir. 2002) (holding the district court did not err by finding deliberate indifference where prison nurses had

been instructed to change Lawson's dressing three times a day, and provide regular medication, a foam mattress, and hydrotherapy, but did none of these things).

Here, Dr. Nipper determined in 2011 that Delaughter requires hip replacement and reconstructive surgery. No party points to evidence that any medical professional has disagreed with Dr. Nipper. Thus, Delaughter's claim arises from the fact he has yet to receive a prescribed course of treatment; it does not arise from his subjective opinion of the sufficiency of his medical treatment that is either contradicted or unsupported by medical professionals.

Second, it is not clear that Dr. Nipper's cancellation of Delaughter's surgery and UMMC's failure to accept Delaughter as a patient were medical-judgment decisions. Indeed, Delaughter claims these decisions were made because MDOC refuses to pay for his surgery. If so, the delay could under certain circumstances "evince a wanton disregard for [a] serious medical need[]." *See Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (noting that a plaintiff shows deliberate indifference by demonstrating the official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs").[7]

---

[7] We have previously suggested that a non-medical reason for delay in treatment constitutes deliberate indifference, and several of our sister circuits have held so explicitly. S*ee Thibodeaux v. Thomas*, 548 F. App'x 174, 175 (5th Cir. 2013) (per curiam) (concluding that Thibodeaux stated a colorable deliberate indifference claim where his surgery was delayed because prison officials sent him to the wrong facility and failed to file the appropriate paperwork); *Reed v. Cameron*, 380 F. App'x 160, 162 (3d Cir. 2010) (per curiam) (noting the deliberate indifference standard is satisfied when a prison official "delays necessary medical treatment based on a non-medical reason") (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004) ("When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity."); *Clinkscales v. Pamlico Corr. Facility Med. Dep't*, No. 00-6798, 2000 WL 1726592, at *2 (4th Cir. Nov. 21, 2000) (per curiam) (unpublished)

No. 16-60246

Factual disputes about the reason for the delay prevent us from determining whether Hatten violated Delaughter's constitutional rights. Delaughter testified that Dr. Nipper told him "they"—presumably MDOC—would not pay for his surgery, and Delaughter's medical records reflect that Dr. Nipper told Delaughter that Delaughter's insurance would not pay for a CT scan or custom components. Hatten produced an affidavit from Dr. Gloria Perry, Chief Medical Officer of the MDOC Office of Medical Compliance, in which she states that "the cost of the surgery was not a factor for MDOC in the referral of Inmate Delaughter to UMMC." But Dr. Perry's affidavit fails to explain why Dr. Nipper cancelled the surgery, nor does it conclusively establish that UMMC's refusal to accept Delaughter was a matter of medical judgment.[8] Therefore, we conclude the district court erred in holding there were no genuine issues of material fact about whether Hatten violated Delaughter's constitutional rights.[9] *See Miles v. Rich*, 576 F. App'x 394, 397 (5th Cir. 2014) (per curiam) (affirming district court's denial of summary judgment because there were questions of fact about "the absence of knee surgery"); *Rodriguez v. Woods*, No. 98-40231, 1999 WL 197117, at *1 (5th Cir. Mar. 18, 1999) (per curiam) (unpublished) (noting there was a genuine issue of material fact about whether prison officials were deliberately indifferent for failing to treat

---

(agreeing with the Third Circuit that "prison officials may not interminably delay medical treatment . . . based on arbitrary and burdensome procedures").

[8] The record is unclear as to the explanation for the delay in surgery between Dr. Nipper's cancellation in the fall of 2011 and the first time MDOC contacted UMMC, which, it appears from Dr. Nipper's notes, occurred in the fall of 2013.

[9] In addition, there may be an issue about whether Hatten has authority to authorize surgery for Delaughter. Delaughter offers evidence that Hatten has this authority because Hatten is the medical administrator and arranged for Delaughter to see Dr. Nipper. Hatten claims that, because he is not a doctor, he has no authority to decide the proper medical care for Delaughter. But that is a different issue than whether he has authority to authorize medical care that a medical professional has deemed proper, and Hatten does not address that issue or point to record evidence to the contrary of Delaughter's evidence.

Rodriguez's knee because the record failed to explain why he never received treatment).

### b. Clearly established law

Having established that summary judgment on the first prong was incorrect, we turn to the second prong of the qualified immunity analysis. Delaughter bears the burden of pointing out the clearly established law and raising a fact issue as to its violation. *Thompson v. Mercer*, 762 F.3d 433, 337, 441 (5th Cir. 2014). Clearly established law is determined by "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (alterations, footnote, and internal quotations omitted). This means "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," although it is not necessary for controlling precedent to have held that the official's exact act was unlawful. *Brown v. Miller*, 519 F.3d 231, 236–37 (5th Cir. 2008) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005), *abrogated on other grounds by Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015)). The central concern is whether the official has fair warning that his conduct violates a constitutional right. *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016).

Delaughter claims it is clearly established that an unjustified delay in obtaining necessary reconstructive surgery for a prisoner violates the Eighth Amendment rights of the prisoner. In support, Delaughter points to three of our unpublished cases in which we concluded that an unjustified delay in surgery could constitute deliberate indifference. *See Miles* 576 F. App'x at 396–97 (affirming district court's denial of summary judgment where an orthopedic doctor told Miles he needed replacement knee surgery and where he had yet to

11

receive it at least three years later[10]); *Rodriguez*, 1999 WL 197117, at *1 (vacating district court's grant of summary judgment where Rodriguez had been approved for surgery but was released before he received it, at least two years later); *Rhett v. Scott*, No. 97-10910, 1998 WL 307736, at *1 (5th Cir. May 21, 1998) (per curiam) (unpublished) (determining claim arising from a 14-month delay in receiving a knee brace was not a frivolous deliberate indifference claim).

As we have noted, it is clearly established that delaying medical care can constitute an Eighth Amendment violation if the prison official "knows that [the] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it," and the delay results in substantial harm. *Mendoza,* 989 F.2d at 195. This precedent, combined with the cases cited above, which specifically address delays of surgical procedures, constitutes a combination of precedential authority and a robust consensus of unpublished authority, and convinces us that Hatten had fair warning that an unjustified delay in surgery is unconstitutional. *See Cooper* 844 F.3d at 525 n.8 (noting that although an unpublished case may not create clearly established law, it may be used to illustrate clearly established law). Therefore, if the fact issues under prong one were resolved in Delaughter's favor, Hatten's conduct would violate clearly established law and he would not be entitled to qualified immunity. Thus, we reverse the district court's ruling and remand the claims against Hatten for further proceedings.

---

[10] The law must be clearly established at the time of the alleged violation. *See Cooper*, 844 F.3d at 524. Thus, because *Miles* was decided in 2014, it can illustrate clearly established law only with respect to the delays in Delaughter's surgery that occurred after the date of that case.

## C. Appointment of Counsel

Delaughter claims that the district court abused its discretion by twice denying his motions for appointment of counsel. There is no right to appointment of counsel in civil cases, but a district court may appoint counsel if doing so "would aid in the efficient and equitable disposition of the case." *Jackson*, 811 F.2d at 262. To make this determination, district courts consider

> (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to investigate adequately the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination.

*Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982) (citations omitted). Generally, appointment of counsel should be reserved for cases presenting "exceptional circumstances." *Id.*

The district court determined that no exceptional circumstances existed because pro se prisoner plaintiffs routinely litigated the types of issues presented by Delaughter's case, the issues were not particularly complex, and Delaughter had proven himself capable of self-representation.

In light of our resolution of this case, these conclusions deserve another look by the district court on remand and, specifically, consideration should be given to the appointment of pro bono counsel on remand. As part of the revised analysis, the district court should consider that Delaughter's claim—that he has been denied medically necessary surgery for seven years—presents circumstances different than the usual prisoner-deliberate-indifference claim. We have previously vacated a district court's denial of a motion to appoint counsel for similar reasons. *See Garner v. Morales*, No. 07-41015, 2009 WL 577755, at *6 (5th Cir. Mar. 6, 2009) (per curiam) (unpublished) (holding that the district court did not conduct a proper analysis of the motion to appoint

counsel because Garner's case was "not the usual one" and the district court had "failed to take into account the particular complexity and legal novelty" of the case).  Thus, counsel might assist in handling the particular complexities of this case; indeed, we benefitted from Delaughter's appointed appellate counsel.

The district court should also consider the fact that the pursuit of this surgery has taken unusual twists and turns making the difficult task of gathering evidence as a pro se prisoner far more difficult than usual.  *See Moore v. Mabus*, 976 F.2d 268, 272 (5th Cir. 1992) (noting one reason for appointing counsel was that "the extensive resources required to pursue properly the issues . . . far exceed the capability and resources of a prisoner").  Thus, we conclude that given the circumstances of this case, appointment of pro bono counsel might "advance the proper administration of justice." *Ulmer*, 691 F.2d at 213.  Accordingly, we vacate the district court's judgment denying appointment of counsel and remand for reconsideration in light of this opinion.

## IV.  Conclusion

For the reasons stated above, we AFFIRM the district court's grant of summary judgment in favor of Dr. Woodall, and REVERSE the district court's grant of summary judgment in favor of Hatten, in both capacities. We VACATE the denial of Delaughter's motions for appointment of counsel and REMAND.

No. 16-60246

JAMES C. HO, Circuit Judge, concurring in the judgment:

The court today remands this case for further proceedings against Michael Hatten, the medical administrator at South Mississippi Correctional Institution, where Thad Delaughter is currently serving his sentence. I write separately to draw attention to Hatten's unopposed motion to supplement the record with additional medical records, which the court today denies. Unless the medical records are somehow discredited, they would appear to undercut Delaughter's claims of unjustified delay or outright denial of medically necessary surgery. It is with the understanding and belief that these medical records can and will be explored on remand that I concur in the judgment.

Hatten submits medical records concerning physician visits that occurred after final judgment was entered in this case on March 18, 2016. Joined by the State of Mississippi, Hatten contends, with some force, that these medical records "directly rebut Delaughter's contention that he is being denied hip replacement surgery due to Defendants-Appellees' refusal to pay for the surgery."

Delaughter indicated in a handwritten response that he "does not object to the Appellees' Motion to Supplement the Record." Nor does he dispute the authenticity of the supplemental medical records.

Hatten's motion explains that, on April 5, 2016, "his treating doctors were ready to proceed ahead with hip replacement surgery, but were forced to postpone surgery because Delaughter admitted he had recently smoked marijuana." Delaughter does not dispute this. And the supplemental medical records confirm it. The records from his physician consultation on April 5, 2016, state that Delaughter was advised that "he needs to be completely drug and nicotine free prior to us proceeding," and that he "openly admits to using marijuana." So it appears by all accounts that Delaughter's own conduct

15

prevented him from receiving the treatment he seeks, at least as of April 2016, the month that he filed notice of this appeal.

In addition, Delaughter's medical records further indicate that, on January 5, 2017, he informed his physician that he has "[n]o acute issues/complaints," and that furthermore, he "expects to be released in the next 5 years if all goes as planned." This is significant because it appears that Delaughter agreed to postpone any surgery until after his anticipated release. As the medical records from his physician consultation on January 5, 2017, explain:

> We discussed the severe complexity of his issues with the patient. This would require a large reconstruction which would have significant intraoperative and postoperative risks. Given his current incarceration, he would likely not be able to receive the ideal postoperative care or likely any postoperative therapy. In light of this being a chronic issue, we discussed the need for delaying any operative intervention until he is released from prison. . . . He understood the need to wait until he is released from prison to maximize his chances of recovery. We encouraged him to remain drug and nicotine free in order to receive operative intervention. Patient understood and agreed with treatment plan going forward. He will follow up with us when he is released from prison.

Delaughter does not contend that these medical reports are false or fraudulent. Indeed, Delaughter offers no explanation whatsoever, other than to state that the information contained in his medical records is "puzzling" because he has "twelve more years to serve."

If it is true that Delaughter is the cause of his own delays—indeed, if it is true that he has consented to postponing surgery until after his release—it is difficult to see how he can prevail on his claim for injunctive relief and damages for pain and suffering. These issues can and should be explored further on remand. I concur in the judgment.