[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11537

_____

JOHN ANDREW KISTER,

Plaintiff-Appellant,

*versus*

QUALITY CORRECTIONAL HEALTH CARE,
QCHC,
M.D. RAYNON ANDREWS,
CHARLOTTE TURNER,
JOHNNY BATES,
NADINE CLOPTON,
ANA FRANKLIN, et al.,

Defendants-Appellees,

2                 Opinion of the Court                 20-11537

NICK BARTON, et al.,

                                            Defendants.

                   ————————————

          Appeal from the United States District Court
             for the Northern District of Alabama
            D.C. Docket No. 5:16-cv-01406-KOB-HNJ

                   ————————————

Before ROSENBAUM, TJOFLAT, Circuit Judges, and STEELE,[*] District Judge.

PER CURIAM:

          John Andrew Kister ("Kister") was a pretrial detainee in the Morgan County Jail ("the Jail") located in Decatur, Alabama, from May 2015 until November 2018. During his confinement Kister repeatedly requested a specific type of narcotic medication to treat a long-standing medical condition. These requests were consistently refused, but Kister was provided or offered alternative medications and medical treatment. Kister sued defendants Quality Correctional Health Care, certain individual medical

_____

[*] The Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

staff,[1] and certain individual jail staff[2] in federal district court alleging, among other things,[3] deliberate indifference to a serious medical need in violation of the United States Constitution.  The district court granted summary judgment in favor of all defendants, finding that the case involved a non-actionable disagreement over medical judgment, not deliberate indifference to a serious medical need.  On appeal Kister contends that, when the record is properly viewed under well-established summary judgment principles, there are at least material disputed facts as to whether his medical treatment was based on independent medical judgment or solely on the Jail's "no narcotics" policy.  We agree, and therefore reverse the district court's grant of summary judgment.

## I.

"We review *de novo* a grant of summary judgment and review findings of fact for clear error." *Buending v. Town of Redington Beach*, 10 F.4th 1125, 1130 (11th Cir. 2021).  Summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] Quality Correctional Health Care ("QCHC") is the entity which provides health care to the inmates in the Jail.  Appellees Dr. Raynon Andrews, Nurse Charlotte Turner, Dr. Johnny Bates, and Nurse Naideen Clopton are collectively referred to as the medical staff.

[2] Sheriff Ana Franklin, Warden Aaron Dawson, Michael Corley (Chief Deputy of Morgan County), and Larry Berzett (Jail Administrator of the Morgan County Jail) are collectively referred to as the jail staff.

[3] The resolution of other claims in the Complaint is not before the Court.

judgment as a matter of law." Fed. R. Civ. P. 56(a). As we recently explained:

> A court assessing motions for summary judgment must "resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor." A court "may not weigh conflicting evidence or make credibility determinations of [its] own. If the record presents disputed issues of fact, the court may not decide them; rather, [it] must deny the motion and proceed to trial."

*Buending,* 10 F.4th at 1130 (citations omitted). For this reason, the actual facts may or may not be as described in this opinion. *See Powell v. Snook,* 25 F.4th 912, 916 (11th Cir. 2022).

## II.

In October 2005, Kister was diagnosed with priapism[4] while incarcerated in Michigan, and Dr. Jason Y. Kim prescribed Ultram/Tramadol[5] to Kister for pain. In 2006, Kister was diag-

---

[4] Priapism is a "[p]ersistent erection of the penis, accompanied by pain and tenderness, resulting from a pathologic condition rather than sexual desire." *Priapism*, Stedman's Medical Dictionary 720430 (2014).

[5] Ultram is a brand name for Tramadol, which is an opiate medication used to relieve moderate to moderately severe pain. Medline Plus, *Tramadol*, U.S. NATIONAL LIBRARY OF MEDICINE, available at https://medlineplus.gov/druginfo/meds/a695011.html (last visited May 6, 2022).

nosed with neuropathy[6] by Dr. Glenn Bedsole due to a damaged nerve that runs from his bladder to his penis which occurred after an earlier episode of priapism. This neuropathy causes constant pain in Kister's penis and lower right abdomen, and sexual dysfunction.

Between 2006 and 2015, Kister sought medical treatment for continued groin and penile pain. Different doctors prescribed different medications to relieve the side effects of his neuropathy, including Tramadol. For example, in 2008, Kister was prescribed Tramadol by physicians at Baptist Hospital. From October 2013 to October 2014, Kister was prescribed Tramadol by Dr. Jerry Robbins and Dr. Hiteshi Bhavsar, with Dr. Bhavsar noting that Tramadol was the only medication which helped Kister. In late 2014 and early 2015, Kister was prescribed Tramadol by Dr. Charles Hagan.

On March 19, 2015, Kister saw Dr. Lindsay Smith, complaining of chronic pain and neuropathy and requesting two tablets of 50 mg Tramadol three times per day. Dr. Smith prescribed half the dosage requested, with no refills. Kister last filled a Tramadol 50 mg prescription from Dr. Smith on April 7, 2015. According to Kister, medications other than Tramadol always proved unsuccessful.

---

[6] Neuropathy is a term for any disorder affecting any segment of the nervous system. *Neuropathy*, Stedman's Medical Dictionary 601870 (2014).

Kister was booked into the Jail on May 17, 2015.  During the booking and evaluation process, Kister was told the Jail was a "no narcotics" facility and that he could not receive narcotic pain medication.  Kister's Tramadol prescription was noted and Kister verbally requested Tramadol, which was refused.  The Jail's "no narcotics" policy prohibited the distribution of narcotic medication to inmates within the general jail housing areas.  Under the policy, an inmate could only receive narcotic medication pursuant to the orders of a physician or medical staff and while in the medical observation unit of the Jail.  The medical observation unit consists of two jail cells.

In September 2015, Kister requested and received an appointment with Dr. Raynon Andrews, who told Kister about the "no narcotics" policy and that Kister could try non-narcotics. Kister responded that non-narcotics were ineffective.  Dr. Andrews stated that he could not order Tramadol due to the "no narcotics" policy and would have to get back with Kister because of the situation created by the policy and Kister's personal medical history.  On November 18, 2015, Dr. Andrews again saw Kister regarding his complaints of neuropathy in his penis.  Dr. Andrews noted that Kister had not taken anything for this complaint since May 2015, when he was booked into the jail, and Dr. Andrews formulated a plan to obtain outside medical records related to Kister's penile neuropathy and to follow up.

Dr. Andrews received and reviewed medical records from Dr. Lindsay Smith and then met with Kister on December 2,

2015.  Kister reported pain and neuropathy periodically in his penis, and that nonsteroidal and anti-inflammatory drugs did not help.  Kister refused to try options other than Tramadol/Ultram, but Dr. Andrews determined that it was inappropriate to prescribe narcotic mediation.

On December 4, 2015, Kister wrote a grievance based on the "no-narcotics" policy.  Kister continued to ask for Tramadol. In January 2016, Dr. Andrews stated that Kister seemed to have a problem with every substitute medication, but Kister explained that he had tried most of them and they were ineffective or made the pain worse.  Dr. Andrews told Kister that he spoke to a "couple of" neurologists who had never heard of penile neuropathy. On April 22, 2016, in response to Kister's grievance appeal, Nurse Charlotte Turner stated that Dr. Johnny Bates, the President of QCHC, had never heard of penile neuropathy and that "[p]ain is not considered a chronic non-chargeable condition.  Tramadol is now considered a narcotic so we don't use it in the facility."

On May 13, 2016, Nurse Naideen Clopton saw Kister, who complained of penile pain but refused Ibuprofen and Tylenol as "neither help him."  On May 17, 2016, Dr. Andrews saw Kister for complaints of his penile neuropathy.  Kister reported that Elavil, Neurontin, Cymbalta, and NSAIDS were ineffective, and that only Tramadol helped.  Dr. Andrews noted that Kister did not display any signs or symptoms of objective pain, and Dr. Andrews did not prescribe narcotic pain medication.  On June 14, 2016, Kister saw Dr. Andrews, who noted that Kister wanted the policy

changed so he could have Tramadol, but Dr. Andrews again declined to prescribe Tramadol.

On June 29, 2016, Dr. Bates provided a verbal order to place Kister in medical observation for penile pain and/or difficulty urinating. No Tramadol was prescribed during Kister's time in medical observation.

On July 8 and July 12, 2016, Nurse Clopton assessed Kister based on reported pain in his penis during erections. Kister requested Tramadol and refused any alternatives. On July 26, 2016, Kister requested Tramadol from Dr. Bates, stating he would take nothing else. Dr. Bates documented that the request was for "questionable penile pain." Dr. Bates determined that the type of penile pain reported "was the type of episodic and transient pain that resolves on its own without the need for further medical intervention." Dr. Bates was concerned that Kister was exhibiting drug-seeking behavior, and that it was "reasonable and appropriate to offer non-narcotic mediation to Kister to treat his reported pain."

By November 9, 2016, Dr. Andrews considered Kister's refusal to explore non-narcotic options as an indicator of drug-seeking behavior because there was a "preoccupation with receiving one narcotic medication in particular." Dr. Andrews last saw Kister on December 7, 2017, and advised Kister that Tramadol was "NOT on formulary here."

20-11537               Opinion of the Court                    9

On December 4, 2016, August 23, 2017, September 26, 2017, October 25, 2017, November 6, 2017, and December 21, 2017, Kister was seen by Morgan County Mental Health Center, an off-site provider for counseling. Each visit was accompanied by the instruction: "Please note we have a NO NARCOTIC policy."

On February 4, 2018, Kister filed a grievance stating that Dr. Andrews told him "that there was no MEDICAL reason not to treat me, just a policy prohibiting it, which is beyond his authority." The response from Nurse Turner was that the same policy that prohibits Dr. Andrews, "also prohibits me."

Kister was placed in medical observation on three occasions: From May 12, 2016, through May 17, 2016; from June 29, 2016, through July 1, 2016; and from July 8, 2016, through July 26, 2016. Kister was not prescribed Tramadol on any of the three occasions. The Sheriff told Kister that he would have to live in medical observation to receive narcotics. Kister stated that he was willing to do anything, but was not allowed to live in one of the two observation cells.

The district court overruled Kister's objections, adopted the Report and Recommendations of the Magistrate Judge, and granted summary judgment in favor of the appellees. The district court found that there were no genuine issues of material fact and that the appellees were entitled to judgment as a matter of law because Kister's complaint was based on a simple difference in medical opinion, which cannot support a constitutional claim of

deliberate indifference.   Kister appeals the district court's judgment.

### III.

Deliberate indifference to the serious medical needs of a pretrial detainee violates the Fourteenth Amendment. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985).   "The Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees convicted persons." *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008).  To establish a claim for deliberate indifference to a medical need, Kister must make three showings: (1) he had an objectively serious medical need; (2) each defendant acted with deliberate indifference to that need; and (3) his injury was caused by the wrongful conduct.   *Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021); *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019).  Only the first and second element are at issue in this appeal.

### A.  Serious Medical Need

The district court assumed that Kister's complaints of pain due to penile neuropathy could qualify as an objectively serious

medical need. On appeal, the medical staff appellees argue that Kister failed to demonstrate an objectively serious medical need.[7]

"A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (internal quotation marks and citation omitted). "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Id.* "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

When viewed in light most favorable to Kister, there is sufficient evidence which would allow a jury to find that Kister suffered an objectively serious medical need. Kister was diagnosed by medical doctors in 2005 and 2006 and had a long history of receiving professional medical treatment for penile neuropathy and pain, including prescriptions for narcotic medication. A factfinder could reasonably find that Kister's penile neuropathy and its resulting pain were objectively serious medical needs. The district court did not err in assuming the existence of a serious medical need.

---

[7] Like the district court, the jail staff assume, for the purposes of appeal, that Kister's penile neuropathy and pain could be considered a serious medical need.

### B.  Deliberate Indifference

To establish deliberate indifference, a plaintiff must prove three elements: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goebert*, 510 F.3d at 1326–27 (quotation and alteration omitted).  When the record evidence is viewed in the light most favorable to Kister, the evidence is sufficient to create a jury issue as to deliberate indifference.

It is clear that appellees knew of Kister's medical condition and his insistence that only Tramadol was effective at controlling the resulting pain.  The issue is whether the consistent refusal to prescribe Tramadol was an independent medical judgment or simply acquiescence to the Jail's "no narcotics" policy.  The question of whether additional forms of treatment or medication should have been employed, "'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)); *see also Hamm*, 774 F.2d at 1575 (explaining that, where an inmate's health complaints received significant medical care, a mere desire for a different method of treatment does not usually amount to deliberate indifference).  On the other hand, "responding to an inmate's acknowledged medical need with what amounts to a shoulder-shrugging refusal even to consider whether a particular course of treatment is appropriate is the very definition of 'deliberate indifference'—anti-medicine, if

you will." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266–67 (11th Cir. 2020). Similarly, failing to treat a serious medical need for non-medical reasons constitutes deliberate indifference. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out.").[8]

Kister argues that the record contains sufficient evidence to defeat summary judgment because a reasonable factfinder could conclude the denial of Tramadol was based on the Jail's no-narcotics policy, not on the independent judgment of the medical

---

[8] Other circuits have reached similar conclusions concerning a course of treatment based on non-medical reasons. *E.g., Brawner v. Scott Cnty.*, 14 F.4th 585, 600 (6th Cir. 2021) ("[A] reasonable jury could find that Nurse[]'s failure to treat [pretrial detainee] appropriately was due to the County's application of the no-narcotics policy, which caused [detainee]'s injuries."); *Colwell v. Bannister*, 763 F.3d 1060, 1063 (9th Cir. 2014) ("[T]he blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that 'one eye is good enough for prison inmates' is the paradigm of deliberate indifference."); *Delaughter v. Woodall*, 909 F.3d 130, 138 n.7 (5th Cir. 2018) ("We have previously suggested that a non-medical reason for delay in treatment constitutes deliberate indifference, and several of our sister circuits have held so explicitly." (collecting cases)); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004) ("When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity."); *De'Lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003) (disputed facts could support the inference that decision to deny inmate hormone treatment "based solely on the Policy rather than on a medical judgment").

professionals.  We agree.  While a factfinder would certainly not be compelled to make such a finding, the record is sufficient to create material issues of disputed facts which may not be resolved by the court.

Kister had a long history of penile neuropathy for which he had been prescribed Tramadol by several physicians.  At least one of Kister's previous physicians, Dr. Bhavsar, noted that Tramadol was the only medication that helped Kister's pain.  When Kister entered the Jail, Kister notified the Jail of his condition and requested Tramadol, which was refused but noted by the Jail.  There is evidence that the medical staff were not familiar with Kister's particular condition, so they would not know how to properly treat it.  While Dr. Andrews did try to familiarize himself with Kister's condition and prior treatment, the record suggests that he only reviewed medical records from Dr. Smith, who treated Kister shortly before his entry into the Jail in 2015, and failed to review records from Kister's previous care from 2005 to 2015.  Kister was placed in medical observation on three occasions, yet was never given Tramadol to verify or refute his assertion that it relieved the pain.

There is also evidence that the medical staff believed that they could not give Kister Tramadol because of the "no narcotics" policy.  The "no narcotics" policy was included on the instructions each time Kister was seen by an outside health agency.  Dr. Andrews told Kister that he could not prescribe Tramadol because of the policy, and he would need to follow-up with Kister

regarding treatment due to the situation created by the policy and Kister's previous medical history.  Nurse Turner responded to one of Kister's grievances requesting Tramadol and complaining about the policy, telling Kister that, much like Dr. Andrews, the "no narcotics" policy prohibited her.

Thus, despite the declarations of the physicians to the contrary, there is evidence from which a reasonable jury could find that the failure to prescribe Tramadol was the result of the "no narcotics" policy and not the result of independent medical judgment.  "[T]aking the easier and less efficacious route in treating an inmate" can be indifference. *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

## IV.

The summary judgment of the district court is reversed as to the claim of deliberate indifference to a serious medical condition.  The case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**