# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 10, 2022

Lyle W. Cayce
Clerk

No. 21-50858

Maria Ramirez, *as Representative of the Estate and Statutory Death Beneficiary of Daniel Antonio Ramirez*; Pedro Ramirez, *as Representative of the Estate and Statutory Death Beneficiary of Daniel Antonio Ramirez*,

*Plaintiffs—Appellees*,

*versus*

Ruben Escajeda, Jr.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:17-CV-193

Before Jones, Stewart, and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Rushing to the scene of an ongoing suicide, El Paso Police Officer Ruben Escajeda, Jr., found Daniel Ramirez in the process of hanging himself from a basketball hoop. But it was dark, Escajeda was afraid Daniel might have a weapon, and Daniel did not respond to Escajeda's orders to show his hands. So Escajeda tased Daniel once, took down his body, and performed CPR. To no avail. Daniel soon after died in the emergency room from the

No. 21-50858

hanging. His parents sued Escajeda for using excessive force, the district court denied qualified immunity, and Escajeda appealed.

The evidence is conflicting on whether the tasing contributed to Daniel's death. We therefore lack jurisdiction to weigh Escajeda's argument that the sole expert medical opinion ruled out tasing as a cause of death. We do have jurisdiction, however, to consider whether Escajeda's conduct violated clearly established law. It did not. The district court and the plaintiffs rely on our cases holding that officers may not use force against arrestees who are already subdued and in police custody. This case is markedly different. The reason Escajeda tased Daniel was that he was *not* in custody and Escajeda was afraid he might have a weapon. Even if that fear turned out to be groundless—something we cannot decide here—Escajeda still did not transgress any clearly established law.

We therefore reverse the district court's decision and render judgment granting Escajeda qualified immunity.

I.

Around 10:36 p.m. on June 23, 2015, Maria Ramirez called 9-1-1 to report that her 30-year-old son Daniel was preparing to hang himself from the basketball hoop in their back yard. Dispatch informed the El Paso Police Department of a suicide in progress. Neither Maria's call nor the dispatch stated that Daniel had a weapon. El Paso Police Officer Ruben Escajeda, Jr., received the dispatch and rushed to the house.

No. 21-50858

When Escajeda arrived minutes later, at 10:40 p.m., he found the lights off.[1] He became concerned, asking himself "Why [was] the house so dark, inside and . . . outside?" Without announcing his presence, he proceeded to the back yard, gun drawn. He decided not to wait for other officers because he felt "urgency to prevent a suicide." Scanning with his flashlight, Escajeda saw Daniel standing on his tiptoes with a rope around his neck connected to a basketball hoop. Daniel was staring forward with his hands clenching the rope around his neck.

Concerned he could be walking into an "ambush," Escajeda repeatedly ordered Daniel to show his hands to ensure he had no weapon. Daniel's hands stayed around the rope. So, Escajeda holstered his gun, moved closer, and tased Daniel in the abdomen for five seconds.[2] Daniel's body tensed and Escajeda saw Daniel's fists squeeze harder and heard a "crunch" or "gargle." Escajeda then removed the rope from around Daniel's neck and lowered him to the ground. He administered CPR on Daniel and felt a faint pulse in his neck. Other officers arrived seconds later and assisted Escajeda with CPR. Paramedics arrived soon after and took Daniel to a nearby emergency room where he was pronounced dead at 11:24 p.m. An autopsy concluded Daniel's death was caused by hanging.

Daniel's parents sued Escajeda under 42 U.S.C. § 1983 alleging the tasing constituted excessive force in violation of their son's Fourth and

---

[1] The plaintiffs contend there was "sufficient lighting conditions for Escajeda to observe Daniel" but do not otherwise dispute that the lights were off and that Escajeda had to use a flashlight.

[2] Escajeda maintains he did not wait the full five-second taser cycle before attempting to rescue Daniel. For purposes of this appeal, however, we accept the plaintiffs' claim that Daniel was tased for five seconds.

3

No. 21-50858

Fourteenth Amendment rights.[3] Escajeda invoked qualified immunity[4] and moved for summary judgment.[5]

The district court denied his motion. As to the first qualified immunity prong, the court found two material fact disputes that precluded it from deciding whether Escajeda used constitutionally excessive force, namely (1) whether the tasing contributed to Daniel's death, and (2) whether the tasing was unreasonable under the circumstances. As to the second prong, the court concluded it was clearly established at the time of the incident that "officers may not use a taser against a subdued person who neither committed any crime nor who resisted the officers' authority." Escajeda timely appealed.

## II.

We review the district court's denial of summary judgment based on qualified immunity *de novo*. *Walsh v. Hodge*, 975 F.3d 475, 481 (5th Cir. 2020).

---

[3] They also sued the City of El Paso for municipal liability, but those claims are not before us.

[4] We disagree with the plaintiffs that Escajeda failed to properly raise qualified immunity in the district court. Escajeda first raised qualified immunity in a motion to dismiss. Having done so, the burden shifted to the plaintiffs to "show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (internal quotation marks and citation omitted). So it is of no moment that Escajeda also raised the defense in his reply in support of summary judgment. And, in any event, the district court reached and decided qualified immunity. The issue has therefore been preserved. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339–40 (5th Cir. 2005) ("An argument must be raised to such a degree that the district court has an opportunity to rule on it.") (internal quotation marks and citation omitted)).

[5] Escajeda previously moved to dismiss under Rule 12(b)(6), invoking qualified immunity and arguing the plaintiffs had failed to state a plausible claim. The district court denied his motion. Escajeda appealed but did not brief his qualified immunity arguments. Our court dismissed the appeal for lack of jurisdiction. *Ramirez v. Escajeda*, 921 F.3d 497, 500–01 (5th Cir. 2019).

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "However, a good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quotation omitted).

On an interlocutory appeal invoking qualified immunity, we consider "only whether the district court erred in assessing the legal significance of the conduct that [it] deemed sufficiently supported for purposes of summary judgment." *Keller v. Fleming*, 952 F.3d 216, 220 (5th Cir. 2020) (quoting *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc)). "[W]e lack jurisdiction to review the district court's decision that a genuine issue of fact exists." *Ramirez v. Martinez*, 716 F.3d 369, 373 (5th Cir. 2013). "[W]e accept the [plaintiff's] version of the facts as true." *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (quoting *Kinney*, 367 F.3d at 348).

## III.

Qualified immunity shields an officer from liability if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, the plaintiffs must show that Escajeda (1) violated a constitutional right and (2) that "the right at issue was 'clearly established' at the time of [the] alleged misconduct." *Id.* at 232 (quotation omitted). Courts have discretion to address either or both prongs. *Id.* at 236.

No. 21-50858

## A.

Escajeda argues for reversal on prong one because the plaintiffs failed to show the tasing caused Daniel's death. We lack jurisdiction to consider this issue, however, because the district court found causation subject to a genuine fact dispute.

"To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017)). The district court found conflicting evidence as to the second part of this test.[6] In the opinion of Escajeda's medical expert, Dr. Mario Rascon,[7] Daniel died solely by hanging and the tasing did not contribute to his injuries. But the plaintiffs' expert in biomechanical engineering, Dr. Victoria Ngai,[8] opined that the taser "set off forces and motions" that could have caused the kinds of neck injuries Daniel suffered. The court thus found a "genuine dispute of material fact as to whether Escajeda's use of force caused [Daniel's] death."

---

[6] The court also found a fact dispute as to the third part, namely whether Escajeda reasonably believed Daniel posed a threat given Escajeda's "misapprehension of the dispatch that there was 'a suicidal suspect with a weapon.'" Escajeda does not contest that issue on appeal and has therefore abandoned it. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

[7] Dr. Rascon was the coroner who performed Daniel's autopsy.

[8] The district court allowed Dr. Ngai to testify as a biomechanical engineer regarding whether "the energy, forces, and motions" involved in the tasing were "sufficient to have caused the type of injuries" Daniel suffered. But the court did not allow Dr. Ngai to testify that the tasing caused Daniel's "specific diagnosed injuries" because she was "not a qualified medical doctor."

On interlocutory appeal of the denial of qualified immunity, "we lack the authority to review the district court's decision that a genuine factual dispute exists." *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) (citing *Kinney*, 367 F.3d at 348); *see, e.g.*, *Maldonado v. Rodriguez*, 932 F.3d 388, 396–97 (5th Cir. 2019). To be sure, we may review whether fact disputes are material to the underlying constitutional issue. *See Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc) (citation omitted). But Escajeda does not challenge the materiality of any fact dispute, instead arguing "the entirety of the issue in this matter is whether [Daniel] was already dead or whether Officer Escajeda killed him by deploying his taser." We therefore lack jurisdiction to review the district court's prong one decision.

### B.

Escajeda next argues that, fact disputes aside, he is still entitled to qualified immunity because his use of force did not violate any clearly established constitutional right. We agree.

"The clearly established inquiry is demanding, especially in claims for excessive force." *Harmon v. City of Arlington*, 16 F.4th 1159, 1167 (5th Cir. 2021) (citing *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)). Excessive force cases often involve officers' "mak[ing] split-second decisions" and "[t]he results depend 'very much on the facts of each case.'" *Id.* at 1166 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam)); *see Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014) (observing "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation" (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989))). This means existing precedent must "squarely govern the specific facts at issue, such that only someone who is plainly incompetent or who knowingly violates the law would have behaved as the

official did." *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (cleaned up). For the same reason, courts must "frame the constitutional question with specificity and granularity," *Morrow*, 917 F.3d at 874–75, rather than "at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). An officer can be stripped of qualified immunity only when "the violative nature of the *particular* conduct is clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks and citations omitted). In sum, controlling precedent must have placed the question "beyond debate," with "the right's contours . . . sufficiently definite that any reasonable official in the [officer's] shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 778–79 (quoting *al-Kidd*, 563 U.S. at 741).

In denying Escajeda qualified immunity, the district court reasoned it was clearly established "that officers may not use a taser against a subdued person who neither committed any crime nor who resisted the officers' authority." The court relied on three of our cases, which the plaintiffs also advance on appeal: *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008); *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012); and *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013).

At the outset, we note that "[b]y citing no factually similar Supreme Court cases, [the plaintiffs] effectively concede[] that Supreme Court precedent offers [them] no help." *Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022). Additionally, the plaintiffs' argument requires us to assume that Fifth Circuit precedent alone can clearly establish the law for qualified immunity purposes, something the Supreme Court has left open. *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) ("assuming" the proposition that "controlling Circuit precedent clearly establishes law for

purposes of § 1983").[9] Those caveats aside, the three circuit cases cited by the plaintiffs are not factually similar enough to the situation Escajeda faced to have placed the lawfulness of his taser use beyond debate.

In *Bush*, an officer bashed the plaintiff's face into a car, breaking two of her teeth, even though her hands were cuffed behind her back. 513 F.3d at 496. Denying qualified immunity, we held the officer "should have known that he could not forcefully slam [the plaintiff's] face into a vehicle while she was restrained and subdued." *Id.* at 502.

In *Newman*, an officer was frisking the plaintiff during a traffic stop when he made a suggestive comment to the officer. 703 F.3d at 760. Officers beat the plaintiff with batons, tased him twice, and tased him again after he fell to the ground. *Ibid.* We denied qualified immunity because "the officers immediately resorted to taser and nightstick without attempting to use physical skill, negotiation, or even commands" when the plaintiff was in custody, "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command." *Id.* at 763–64.

Finally, in *Martinez*, the plaintiff confronted officers who were at his business executing a warrant for his sister-in-law's arrest. 716 F.3d at 372. When the plaintiff refused to put his hands behind his back and batted an officer's hand away, the officer tased him and other officers forced him face-down on the ground and handcuffed him. *Id.* at 373. The plaintiff stopped resisting, but the officer tased him again. *Id.* at 372–73. We relied on *Bush* and *Newman* to deny qualified immunity, reasoning the plaintiff allegedly "posed

---

[9] *See, e.g.*, *Betts v. Brennan*, 22 F.4th 577, 584–85 n.6 (5th Cir. 2022) (assuming without deciding that circuit precedent can clearly establish the law); *Crittindon v. LeBlanc*, 37 F.4th 177, 199 n.4 (5th Cir. 2022) (Oldham, J., dissenting) ("The Supreme Court has never said that we can hold . . . officers liable under § 1983 for violating the commands of *our* precedent (as opposed to theirs).").

no threat to the officers and yet was tased twice, including once after he was handcuffed and subdued while lying face down on the ground, in violation of clearly established law." *Id.* at 379.

These cases do not clearly establish Escajeda's conduct was unlawful. All three involved plaintiffs already under police control (either handcuffed or submitting to a frisk) who were nevertheless subjected to gratuitous violence (face slammed into a car, beaten with batons, tased). Those cases are not this one. Contrary to the plaintiffs' arguments, Escajeda did not have Daniel "subdued" and under his control when he used the taser. To the contrary, Escajeda faced a "tense, uncertain, and rapidly evolving" situation, *Plumhoff*, 572 U.S. at 774, wholly unlike those faced by the officers in *Bush*, *Newman*, and *Martinez*.

Escajeda used the taser precisely because Daniel was *not* in custody and Escajeda was unsure whether the strange scenario he faced posed a threat to his safety. Perhaps his fear that he might be walking into an "ambush" was unfounded; in that event, the tasing could be excessive under prong one of the analysis. *See supra.* But even so, no authority cited by the plaintiffs remotely addresses the situation Escajeda faced. It follows, then, that Escajeda could not have been on notice that his single use of the taser was clearly unlawful. *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (explaining "the focus [of qualified immunity] is on whether the officer had fair notice that her conduct was unlawful").

Furthermore, the district court did not "frame the constitutional question with specificity and granularity." *Morrow*, 917 F.3d at 874–75. The court asked about the proper use of tasers "against a subdued person." That is too general. It is one thing to ask whether police may tase someone after they have handcuffed him and put him face-down on the ground. *Cf. Martinez*, 716 F.3d at 372. It is quite another to ask whether an officer may

tase someone who may be hanging himself, who may or may not have a weapon, who does not respond to the officer's commands—all when the officer approaches him rapidly, alone, and in the dark.

"These multiple factual distinctions matter." *Betts*, 22 F.4th at 586. Even viewing the facts most favorably to the plaintiffs, as we must, the unusual setting separates this case from routine pat-downs and arrests gone wrong where officers pointlessly or sadistically use force. Existing precedent did not put the lawfulness of Escajeda's actions "beyond debate," *al-Kidd*, 563 U.S. at 741, and so his use of a taser under these unique circumstances did not violate clearly established law.

\*\*\*

Accordingly, we REVERSE the district court's judgment and RENDER judgment granting Officer Escajeda qualified immunity.