# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 12, 2022

Lyle W. Cayce
Clerk

No. 21-20232

Robin Wayne Smith,

*Plaintiff—Appellee*,

*versus*

Lannette Linthicum, Director of Health Services
Division, Texas Department of Criminal Justice; Denise
DeShields, Executive Medical Director, Texas Tech
University; Sheri J. Talley, Medical Director Texas
Department of Criminal Justice,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-787

Before King, Duncan, and Engelhardt, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:*

This Eighth Amendment § 1983 case pits a Texas prisoner with a rare medical condition causing severe pain against state medical officials whose

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20232

collective refusal to approve a pain-alleviating procedure allegedly constitutes cruel and unusual punishment. The defendants unsuccessfully invoked qualified immunity in failed motions for summary judgment. On this interlocutory appeal, they reassert their entitlement to qualified immunity. Jurisdictionally cabined by the procedural posture of this case, we AFFIRM and leave what appear to be difficult fact questions to the jury.

I

The plaintiff Robin Smith is a Texas prisoner and Marine Corps veteran who suffers from a rare condition called loin pain hematuria syndrome (LPHS). Smith's LPHS afflicts him with a "constant [and] sharp stabbing pain in his left loin, abdomen, and groin area that is exacerbated by almost all everyday physical activities, including walking." In 2002, Smith had a spinal cord stimulator (SCS)[1] implanted to ease his pain. In 2003 and 2005, VA physicians adjusted Smith's SCS to improve its functionality. In 2011, the VA approved Smith for a full-scale replacement of his by-then-malfunctioning SCS. Before the procedure could take place, Smith received a 35-year prison sentence without possibility of parole. He is now slated to be a Texas prison inmate until 2048.

Smith's altered legal situation did not alter his unfortunate medical situation. In prison as in society, Smith's LPHS continued to ail him, and his suboptimal SCS continued not to help much. Beginning shortly after his commitment to Texas Department of Criminal Justice (TDCJ) custody and repeatedly for the next several years, Smith complained of severe pain and

---

[1] "A spinal cord stimulator is an implanted device that sends low levels of electricity directly into the spinal cord to relieve pain." EELLAN SIVANESAN, M.D., JOHNS HOPKINS MED., SPINAL CORD STIMULATOR, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/treating-pain-with-spinal-cord-stimulators.

No. 21-20232

sought the SCS replacement the VA had prescribed him before his legal troubles interfered. On two occasions most salient here—in August 2016 and October 2016—defendant Dr. Sheri Talley[2] categorically rebuffed referrals Smith received from third-party medical professionals for SCS repair or replacement. In response to a first doctor's referral, Talley stated flatly:

> We don't service, place, replace batteries, or remove any of those stimulators. It will still be there when his sentence is over. We don't even have a specialist on contract, such as a pain specialist that he can be sent to anyway. He'll be treated for his chronic pain the same way all of our patients are treated.

Talley's response to a second physician's referral was equally categorical:

> Care, upkeep, removal of pain stimulators will not occur while offender is in TDCJ. Batteries will not be replaced. Please manage pain according to [Disease Management Guidelines].

For the next few years, prison medical staff did just that, prescribing a series of "conservative" palliatives like ibuprofen and work restrictions in lieu of the SCS replacement that multiple doctors agreed Smith needed. In "uncontrolled" pain and with little hope of receiving a working SCS before his projected release in 2048, Smith filed a pro se § 1983 complaint against—as relevant on this appeal—Talley and two higher-ups: Dr. Denise Deshields, the Executive Medical Director of the Texas Tech University Health Sciences Center (TTUHSC), and Dr. Lannette Linthicum, the Director of the TDCJ Health Sciences Division. Smith claims that Talley's categorical defiance of his requests for surgical repair or replacement of his SCS in the face of his deteriorating medical condition, the lengthy duration of his sentence, and the counter-recommendations of multiple other physicians

---

[2] Dr. Talley is the Southern Regional Director of the Texas Tech University Health Sciences Center and the state official most directly involved in the TDCJ's refusal to grant Smith's ongoing request for SCS repair or replacement.

constitutes deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He also sues Deshields and Linthicum on a supervisory liability theory. For relief, he seeks damages from all three defendants and an injunction ordering the defendants to allow his transfer to a VA hospital for "surgery to replace his [SCS]."

In the district court, the defendants filed initial motions to dismiss that were granted in part. After answering Smith's remaining claims, the defendants moved for summary judgment on qualified immunity grounds. The district court denied their motions and withheld qualified immunity, finding triable fact issues as to "whether Talley acted in deliberate indifference to [Smith's] medical needs and whether the Defendants created and implemented a categorical policy not to treat medical issues regarding a SCS device that is malfunctioning regardless of the duration of a prisoner-patient's incarceration, in deliberate indifference to an inmate's serious medical needs." On this interlocutory appeal, the defendants reassert their entitlement to qualified immunity and to summary judgment on Smith's claim for injunctive relief.

Hemmed in by the interlocutory nature of the defendants' appeal, we agree with the district court on the lone legal question we have jurisdiction to address.

## II

A district court's denial of qualified immunity at the summary judgment stage is subject to "circumscribed" de novo review. *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021). "In a typical summary-judgment case, we review the district court's analysis de novo, asking the same question that the district court did—whether the movant has shown 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)). By

contrast, in reviewing a denial of qualified immunity, we "accept the district court's determination that there are genuine fact disputes" and "ask only 'whether the factual disputes that the district court identified are *material* to the application of qualified immunity.'" *Id.* (first citing *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc); then quoting *Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018)). Accordingly, when a district court identifies disputes of fact it deems sufficient to preclude qualified immunity, this court assesses only whether the resolution of such facts in either party's favor would affect the defendants' entitlement to qualified immunity. *Cf. Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam) (detailing "materiality" standard) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996)). We review questions of law in this subset of qualified immunity cases, not disputed questions of fact. Materiality, not genuineness. In fact, "[w]e lack *jurisdiction* to decide whether the fact disputes the district court identified are genuine." *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022) (some emphasis added some emphasis omitted).

So it goes here—despite some 500 pages of medical records before us[3] and the defendants' consistent contention that Smith's suit is simply rooted in his otherwise unactionable disagreement with the alternative LPHS treatments Talley has directed for him[4]—that the sole question we have

---

[3] Much of these records pertain to Smith's medical history before his incarceration. In any event, though, the district court's findings control for present purposes. The district court found that "[t]he medical records reflect that Smith has an existing, albeit non-functional, SCS implanted in his body that was effective in managing his pain when it was working correctly," but that the TDCJ's refusal to grant him corrective surgery and the total failure of the prison's "conservative" pain treatments have "[left] him to suffer with uncontrolled pain." *Smith v. Linthicum*, 2021 WL 1742328, at *4, 6 (S.D. Tex. Mar. 30, 2021).

[4] Without question, an inmate's simple difference in opinion with prison medical officials denying him his preferred course of treatment is not actionable under the Eighth Amendment. We have repeatedly held that "[t]here is no Eighth Amendment claim just

power to address is an entirely legal one: whether a categorical policy prohibiting any repair or replacement of an implanted SCS constitutes deliberate indifference to the serious medical needs of an inmate who requires such repair or replacement. The district court found a genuine fact dispute as to whether the defendants maintained such a policy and whether Smith is such an inmate. Unable to review those findings, we take them for granted in tackling the legal question at issue and hold that a prison's refusal to repair or replace an inmate's SCS in service of a blanket policy to that effect violates the clearly established law of this Circuit.

## A

"Qualified immunity shields public officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kokesh*, 14 F.4th at 391 (cleaned up). This lends itself to a familiar two-part inquiry. "In the first [inquiry] we ask whether the officer's alleged conduct has violated a federal right; in the second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc).

We address each question in turn and answer both affirmatively.

---

because an inmate believes that 'medical personnel should have attempted different diagnostic measures or alternative methods of treatment.'" *Gibson v. Collier*, 920 F.3d 212, 221 (5th Cir. 2019) (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)).

No. 21-20232

1

In 1976, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion)). This court has long since held that a prisoner "can demonstrate an Eighth Amendment violation by showing that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam) (quoting *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001)).

Here, the district court found a genuine dispute of fact as to whether Talley's categorical refusal of Smith's pleas for SCS surgery violated his Eighth Amendment right to be free from the aforementioned forms of medical mistreatment. Two statements by Talley stood out in that regard. First, her statement that: "We *don't* service, place, replace batteries, or remove any of those stimulators. It will still be there when his sentence is over." (Emphasis added.) And second, her statement on a later occasion echoing that: "Care, upkeep, removal of pain stimulators *will not* occur while [Smith] is in TDCJ." (Emphasis added.) The district court found that a jury could reasonably construe these statements as representative of "more than a mere disagreement about treatment," but rather of "a fixed, categorical refusal to treat a painful medical condition." *Smith v. Linthicum*, 2021 WL 1742328, at *6 (S.D. Tex. Mar. 30, 2021). This, the district court found, was further confirmed by the fact that "several of [Smith's] medical providers, who performed his physical examinations and afforded him with primary care at the unit level, recommended referral to pain management and an

evaluation regarding his SCS, but Talley refused the requests . . . each time."

We have held that a "serious medical need is one for which treatment has been recommended," *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006), and that an inmate "can demonstrate an Eighth Amendment violating by showing that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for [his] serious medical needs.'" *Easter*, 467 F.3d at 464 (quoting *Domino*, 239 F.3d at 756). If proved at trial, Talley's wanton disregard for the "excruciating" pain Smith claims he may well experience for another quarter-*century* without corrective SCS surgery would be textbook deliberate indifference under this caselaw and, accordingly, a constitutional violation. The district court found a genuine dispute as to whether such deliberate indifference is ongoing in this case, so a jury must ultimately decide if that is in fact true.

Smith's claims against supervisory-official defendants Deshields and Linthicum must likewise proceed to trial because "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt*, 828 F.3d 298, 304 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)); *see also Gates v. Tex. Dep't of Prot. & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) ("A supervisory official may be held liable . . . if . . . he implements unconstitutional policies that causally result in the constitutional injury."). As the district court concluded, Talley's statements that "*We*" don't fix "*any* of *those* stimulators" show that it may well be the case here that Talley's potentially unconstitutional refusals to treat Smith were made in accordance with a policy Smith's supervisors enacted to that effect. *See*

*Smith*, 2021 WL 1742328, at *6 ("Talley's categorical denial of the multiple requests from Smith's medical providers for referral or repair of that device creates triable issues of fact as to whether [TTUHSC] or TDCJ instituted a policy not to treat SCS issues regardless of the circumstances and whether that policy was implemented in deliberate indifference to an inmate like Smith's serious medical needs."). The district court couldn't rule that possibility out on summary judgment and we can't second guess its determination in that regard, so again, a jury must decide on a full airing of the facts at trial.

The defendants' attempt to recharacterize the right Smith is claiming as one to choose an inmate's own course of medical treatment among several viable alternatives hides the ball and misapprehends the narrow scope of our present review. Strange as it may sound, the sole question before us now is not what is actually happening in Smith's prison—or how well the prison's "conservative" treatment measures are working on Smith's LPHS—but instead whether the genuine fact disputes the district court identified on those matters have a material effect on the defendants' entitlement to qualified immunity. As explained, they do.

2

As for countless plaintiffs before him, the "clearly established" inquiry is the more challenging one for Smith. The Supreme Court has repeatedly reaffirmed the importance of ensuring that state officials in challenging jobs (and often, though not necessarily here, making hasty decisions) be afforded every benefit of the legal doubt before losing their qualified immunity from § 1983 suit. Thus, even when an official violates a plaintiff's legal rights, she is still entitled to qualified immunity if her actions were "objectively reasonable under the circumstances." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). To further protect "officers who

reasonably but mistakenly commit a constitutional violation," objective reasonableness in this sense is no tall order. *See Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 537 (5th Cir. 2004). This court deems a defendant's actions objectively reasonable "unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

Additional guardrails abound. For one, we are "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). For another, we are instructed to undertake the clearly established inquiry "in light of the specific context of the case [and] not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). Thus, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (alteration in original) (quoting *al-Kidd*, 563 U.S. at 742). All the while, it is the plaintiff's burden to identify a favorable case that defines the law with sufficient clarity. *See, e.g.*, *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam).

Still, doing so is not impossible. We've held that "[t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

We hold here that one particular decision of our court[5] reiterated and strengthened existing law such that the defendants had reasonable warning that any policy of categorically denying SCS replacements without regard to an inmate's serious medical need constitutes Eighth Amendment deliberate indifference: *Delaughter v. Woodall*, 909 F.3d 130, 137–39 (5th Cir. 2018).[6] There, we denied prison medical officials qualified immunity from an inmate's claim that an unjustified delay in a surgery he needed was motivated not by medical disagreement on the prison's part but instead by financially motivated deliberate indifference. *See id.* at 137–39. The prison officials in *Delaughter* delayed the inmate plaintiff's surgery because they didn't want to pay for it, not because they disagreed with the plaintiff as to whether the surgery was medically necessary or whether an alternative treatment was equally viable. *See id.* That kind of delay for a reason other than genuine

---

[5] Although the Supreme Court has explicitly left open the question of whether Circuit law alone can clearly establish the law for qualified immunity purposes, *see Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam) ("assuming" the proposition that "controlling Circuit precedent clearly establishes law for purposes of § 1983"), we've established a prior practice of assigning our own decisions such legal weight, *see Sims*, 35 F.4th at 952 (holding that "our [i.e., the Fifth Circuit's] decision in *Easter* clearly established [the plaintiff's] rights before the [defendants] allegedly violated them").

[6] It is of course notable that *Delaughter* was decided more than a year after Talley's latest-recorded rejection of Smith's requests for an SCS replacement. But we are nonetheless satisfied of its capacity to give "reasonable warning" here for two reasons. First, as we discuss below, because *Delaughter* codified legal developments that were already long in motion when Talley categorically denied Smith's requests in 2016. *See Delaughter*, 909 F.3d at 138 n.7 ("We have previously suggested that a non-medical reason for delay in treatment constitutes deliberate indifference, and several of our sister circuits have held so explicitly."). And, second, because of the ongoing nature of the harm Smith claims in this case; Talley could have stopped withholding Smith's needed medical procedure for nonmedical reasons in 2018—when this court handed *Delaughter* down—but never chose to do so. This case is accordingly a far cry from the typical § 1983 case (like, say, a shooting, an excessively forceful takedown, an illegal search). The defendants here received reasonable warning that their *ongoing* treatment of the plaintiff might be unconstitutional but never reconsidered the issue.

medical judgment, the panel mused, "could under certain circumstances evince a wanton disregard for a serious medical need." *Id.* at 138 (cleaned up). As the panel further observed, the Fifth Circuit had "previously suggested," albeit in an unpublished case, "that a non-medical reason for delay in treatment constitutes deliberate indifference, and several of our sister circuits [had] held so explicitly." *Id.* at 138 n.7 (citing *Thibodeaux v. Thomas*, 548 F. App'x 174, 175 (5th Cir. 2013) (per curiam); *Reed v. Cameron*, 380 F. App'x 160, 162 (3d Cir. 2010) (per curiam); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004); and *Clinkscales v. Pamlico Corr. Facility Med. Dep't*, 2000 WL 1726592, at *2 (4th Cir. Nov. 21, 2000) (per curiam).

More significantly, *Delaughter* merely reiterated and solidified what has long been the law in this circuit: that a prison medical official's decision to deprive an inmate of a medically needed surgery like Smith's forbidden SCS replacement here must be the product of a genuine and considered *medical* judgment, not a nonmedical reason like a refusal to pay (as in *Delaughter*) or a blanket and non–medically considered[7] policy against the procedure (as the district court found could genuinely be the case here).  In one such prior case, our circuit found deliberate indifference when, for non-medical reasons, the prison official "failed to follow a prescribed course of treatment." *Easter*, 467 F.3d at 464. In another case, though unpublished, we held that despite multiple x-rays and provision of "various pain

---

[7] This fact is crucial. To be sure, we do *not* hold today that an inmate has an Eighth Amendment claim any time a prison refuses him medical treatment he would prefer to receive, previously received, or would be able to pursue if not incarcerated. We hold merely that a prison must simply articulate some legitimately considered basis for its alternative medical opinion and treatment regime or for its non–medically indifferent policy against a certain procedure an inmate may need. Talley's puzzling (and blunt) failure to do so here may make this case a one-off.

medications," a prison's arguably incorrect treatment of a prisoner's medical need could constitute deliberate indifference where the fact issues remaining included the potentially non-medical nature of the justifications for the lack of other medical treatment. *Miles v. Rich*, 576 F. App'x 394, 396 (5th Cir. 2014) (per curiam).

If anything, Smith's situation here could prove even *worse* than the situation this court found unconstitutional in *Delaughter*. Whereas Delaughter's claim arose from the fact that his medically required procedure had merely been *delayed* for nonmedical reasons, Smith's claim here raises the possibility that he is being deprived of any effective treatment *whatsoever* for nonmedical reasons. Indeed, the district court here found a triable issue of fact as to whether Smith's "SCS is no longer functioning and [the prison's alternative] medications have lost their effectiveness, [thereby] leaving him to suffer with uncontrolled pain." *Smith*, 2021 WL 1742328, at *4. As our review is cabined at this stage to whether or not the genuine factual disputes found by the district court are material as a matter of law, we can go no farther than to say that, if these issues of fact are resolved in Smith's favor, they would have a material impact on the Defendants' qualified immunity claim. Likewise, further discovery might support a renewed motion based on qualified immunity.

## III

The district court found that summary-judgment evidence in this case raised genuine issues of fact regarding whether a dire medical need of the plaintiff is going uncorrected for no reason more than a prison system's blanket policy against allowing a surgery that third-party physicians have recommended to address such need. Without jurisdiction to consider the genuineness of that fact dispute, we deem it legally material to the defendants' ability to successfully invoke their qualified immunity defense at

the summary judgment stage because such a categorical and non–medically considered policy would indeed violate our Circuit's clearly established law on the Eighth Amendment if proved at trial. This holding has no effect on the defendants' ability to reassert their qualified immunity defense at trial, where a jury can determine whether the facts of this case indeed demonstrate the defendants' implementation of an unconstitutional policy.[8] That question is not for this panel to decide on interlocutory review.

The district court's denial of the defendants' motions for summary judgment is accordingly AFFIRMED.

---

[8] *See* FIFTH CIR. PATTERN JURY INSTRUCTION (CIV. CASES) 10.3.

No. 21-20232

STUART KYLE DUNCAN, *Circuit Judge*, concurring in part and dissenting in part:

Smith claims to suffer from a rare condition—loin pain hematuria syndrome ("LPHS")—that sometimes causes him severe abdominal pain for no identified physiological cause. He sued Texas prison officials under the Eighth Amendment for refusing to repair or replace his malfunctioning spinal cord stimulator ("SCS"), a device implanted by the Veterans Administration to alleviate Smith's pain before Smith's sentence began. Finding material fact disputes, the district court denied the officials qualified immunity. Those fact disputes deprive us of jurisdiction to decide the merits of Smith's Eighth Amendment claim on interlocutory appeal. I therefore concur in Part II.A.1 of the majority opinion, with the qualifications noted below. But I respectfully dissent from Part II.A.2 of the majority opinion, because Smith fails to show the officials violated clearly established law. I would therefore reverse the district court's judgment denying qualified immunity, except to the extent that Smith is seeking injunctive relief.[1]

I.

The gist of Smith's Eighth Amendment claim is that the officials showed "deliberate indifference to [his] serious medical needs" by enforcing a policy of excluding SCS devices to treat chronic pain. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The district court found that fact disputes prevented it from deciding that claim. It's important to specify what those fact disputes were—especially because there's *no* dispute that the prison tried to treat

---

[1] Our precedents hold that qualified immunity does not bar claims for injunctive relief. *See Singleton v. Cannizzaro*, 956 F.3d 773, 778 n.3 (5th Cir. 2020) (citing *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991)); *see also Striz v. Collier*, 2022 WL 1421834, at *1 (5th Cir. May 5, 2022) (unpublished); *Sinclair v. Fontenot*, 216 F.3d 1080, 2000 WL 729367, at *3 (5th Cir. 2000) (unpublished).

Smith's condition with various courses of pain medication (including codeine, naproxen, meloxicam, ibuprofen, tramadol, carbamazepine, and nortripyline). The district court found some evidence, however, that these medicines weren't helping Smith and that a working SCS was the only way of treating LPHS. That may or may not be true. But if it is, Smith may have a claim that the officials showed deliberate indifference by "refus[ing] to treat" his LPHS with the only medically effective treatment. *See Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (per curiam).

The majority decides only that and nothing more. Importantly, it does not decide that the Eighth Amendment requires prisons to let inmates "choose . . . [their] own course of medical treatment among several viable alternatives." *Ante* at 9. The majority recognizes that such a holding would fly in the face of settled law. *See ante* at 6 n.4 (noting "[w]e have repeatedly held that '[t]here is no Eighth Amendment claim just because an inmate believes that "medical personnel should have attempted different diagnostic measures or alternative methods of treatment"'") (quoting *Gibson v. Collier*, 920 F.3d 212, 221 (5th Cir. 2019)). To prove deliberate indifference, Smith must show more than "a genuine debate . . . within the medical community about the necessity or efficacy of [SCS]" for treating LPHS. *Gibson*, 920 F.3d at 221. He must show "universal acceptance" that a SCS is the only way to treat that rare condition. *Ibid.*

Based on that understanding, I agree that the genuine factual disputes identified by the district court deprive us of jurisdiction to decide the merits of Smith's Eighth Amendment claim. *See, e.g.*, *Ramirez v. Escajeda*, 44 F.4th 287, 291–92 (5th Cir. 2022) (concluding fact disputes precluded our

No. 21-20232

jurisdiction to decide first prong of qualified immunity). If Smith can prove that claim at trial, he may be entitled to injunctive relief.[2]

## II.

But the majority errs by concluding the officials violated clearly established law. The majority relies on "one particular decision of our court" to clearly establish the unreasonableness of the officials' conduct—*Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2018). *Ante* at 11. Even assuming[3] one circuit decision can clearly establish the law, *Delaughter* is quite different from this case.

In *Delaughter*, a doctor determined a prisoner required hip replacement and reconstructive surgery, a diagnosis "no medical professional . . . disagreed with." 909 F.3d at 138. Yet evidence suggested the surgery was denied because the Department of Corrections "refuse[d] to pay for [it]" *Id.* at 139. If true, that cost-driven decision violated the Eighth Amendment by denying necessary treatment for a "non-medical reason." *Id.* at 138–39 & n.7. And such an "unjustified delay in obtaining necessary . . . surgery for a prisoner," we held, violates clearly established law. *Id.* at 140 (citations omitted).

---

[2] The content of any such relief is another matter, however. At oral argument, both parties represented that Smith's SCS has been removed. O.A. Rec. at 13:04–13:30; 22:38–23:02. Given that changed state of affairs, I express no opinion on whether Smith—assuming he proves his Eighth Amendment claim—should be granted an injunction.

[3] Both the Supreme Court and our precedents say this is an open question. *See, e.g.*, *Ramirez*, 44 F.4th at 293 & n.9 ("[T]he plaintiffs' argument requires us to assume that Fifth Circuit precedent alone can clearly establish the law for qualified immunity purposes, something the Supreme Court has left open.") (citing *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (per curiam); *Betts v. Brennan*, 22 F.4th 577, 584–85 n.6 (5th Cir. 2022); *Crittindon v. LeBlanc*, 37 F.4th 177, 199 n.4 (5th Cir. 2022) (Oldham, J., dissenting)). I'm aware of no decision from our court that has settled this issue.

*Delaughter* doesn't clearly establish that the officials' actions in this case were unreasonable. No evidence suggests the policy against SCS devices was driven by cost. That was the key in *Delaughter*. *See id.* at 139 ("Delaughter testified that Dr. Nipper told them 'they'—presumably MDOC—would not pay for his surgery."); *id.* at 139 (delaying surgery "because MDOC refuses to pay for [it] . . . could under certain circumstances evince a wanton disregard for a serious medical need") (cleaned up). But here the evidence shows the SCS policy was driven by medicine, not cost. Look at the quotes from Dr. Talley the majority relies on. *Ante* at 3. In the first, right after stating the policy against using "stimulators," Dr. Talley says Smith will "be treated for his chronic pain the same way all of our patients are treated." In the second, right after stating TDCJ doesn't use "pain stimulators," Dr. Talley says: "Please manage pain according to [Disease Management Guidelines]." The policy prefers one treatment for chronic pain (pain medications) over another (SRS). That isn't the money-over-medicine calculus *Delaughter* turned on. Moreover, in *Delaughter* the prisoner got *no* treatment; here, Smith has received *numerous* courses of pain medication.

Trying to tailor *Delaughter* to this case, the majority stretches it beyond its facts. It says *Delaughter* "clearly established" that a prison's decision not to provide surgery "must be the product of a genuine and considered *medical* judgment, not a nonmedical reason like a refusal to pay . . . or a blanket and non-medically considered policy against the procedure[.]" *Ante* at 12. *Delaughter* isn't that broad. As discussed, *Delaughter* addressed a prison's cost-driven decision to deny necessary surgery, not a failure to use its "genuine and considered medical judgment." The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (citation omitted). Unfortunately, that's what the

majority does here. Telling prison doctors they must use "genuine and considered medical judgment" wouldn't have notified these defendants that the SRS policy violated the Constitution. *See, e.g.*, *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (cleaned up).

Finally, putting all that aside, there's the added problem that *Delaughter* came out too late to inform Dr. Talley's judgment. Dr. Talley last denied Smith's request for SCS replacement on February 8, 2017. As the majority recognizes, *Delaughter* was published "more than a year" later on November 19, 2018. *Ante* at 11 n.6. The majority says this doesn't matter because of the "ongoing nature of the harm Smith claims" and speculates that "Talley could have stopped withholding [the SRS replacement] in 2018—when this court handed *Delaughter* down—but never chose to do so." *Ibid.* I disagree. Smith seeks damages from Dr. Talley from something she *did* that allegedly violated his Eighth Amendment rights. Nothing in the record suggests Dr. Talley was presented with, and denied, Smith's request for SCS replacement after *Delaughter* was issued. So, that decision couldn't have given Dr. Talley "fair notice that her conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).[4]

---

[4] The majority also asserts that "*Delaughter* merely reiterated and solidified what has long been the law in this circuit[.]" *Ante* at 12. I disagree. The majority cites two prior decisions but, in my view, neither clearly establishes the unconstitutionality of Talley's conduct. One, *Miles v. Rich*, 576 F. App'x 394 (5th Cir. 2014) (per curiam), is unpublished and so "cannot be the source of clearly established law for qualified immunity analysis." *Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022) (citation omitted). The second, *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006), is distinguishable. There, an official knew a prisoner with severe chest pain needed his prescribed nitroglycerin, knew the pharmacy was closed, but nonetheless "sent Easter back to his cell without providing him any treatment." *Id.* at 463–64. That is different from disagreeing over treatment options for chronic pain.

No. 21-20232

Accordingly, I would reverse the district court's judgment insofar as it denies the defendant officials qualified immunity. I would remand solely for the purpose of deciding whether Smith is entitled to injunctive relief.