# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 16, 2025

Lyle W. Cayce
Clerk

No. 24-40277

Alejandro Estevis,

*Plaintiff—Appellee*,

*versus*

Ignacio Cantu, *In his individual capacity*; Eduardo Guajardo, *In his individual capacity*,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:22-CV-22

_____

Before Haynes, Duncan, and Wilson, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

After a two-hour, high-speed pursuit of Alejandro Estevis through the nighttime streets of Laredo, officers from the Laredo Police Department (LPD) forced Estevis's truck off the road and boxed him in. Unwilling to surrender, Estevis rammed his truck into one of the police cruisers and lurched off the road into a fence, wheels smoking and engine revving. At that point, two LPD officers fired nine shots into the truck over the course of ten seconds, badly injuring Estevis, who sued them for using excessive force.

No. 24-40277

The district court granted the officers qualified immunity for shots 1–3 but denied it for shots 4–9. We reverse and render judgment granting the officers qualified immunity for all shots fired. At a minimum, the officers did not violate clearly established law by firing those additional shots under the dangerous and unpredictable circumstances facing them.

**I**

**A**

On April 9, 2020, around three in the morning, LPD Officer Karla Pruneda noticed Estevis slumped over inside his pickup truck on the side of the road. Intending to perform a welfare check, she parked her patrol car behind the truck and activated her bar lights. Estevis fled.

For the next two hours, police chased Estevis through the city and surrounding area, with Estevis running stop signs and traffic lights and, at times, reaching speeds over 100 mph. At some point, LPD officers were ordered to disengage, but some, including Officer Guajardo, eventually rejoined the pursuit. Meanwhile, officers from other agencies—the Texas Department of Public Safety and the United States Border Patrol—placed spike strips in Estevis's path. By around 5 a.m., officers had succeeded in deflating some of Estevis's tires.

Yet Estevis continued to flee, albeit at a low speed. At this point, responding to a request by LPD Sergeant Lozano, Officer Cantu used his Crown Victoria to slowly force Estevis off the road and onto a grassy area past the shoulder. That maneuver and what follows were captured on several dash-cam and body-cam videos from multiple angles.[1]

---

[1] Two of the videos contain body-cam footage from Officer Guajardo and Officer Cantu. The other two videos contain dash-cam footage from a third officer and Guajardo.

No. 24-40277

Officer Guajardo positioned his vehicle directly behind Estevis's stopped truck. Both officers then exited their vehicles, Officer Cantu drawing his gun. Estevis immediately threw his truck into reverse and, smoke billowing from his wheels, rammed Guajardo's vehicle. Guajardo screamed "Stop!" and warned advancing officers, "Watch the crossfire!"

Seconds after hitting Guajardo's car, Estevis's truck lurched forward and Guajardo fired three shots at the truck's cabin (shots 1–3). Estevis hopped the right-hand curb and collided with a fence, engine revving. During the next four-to-five seconds, Guajardo advanced and, just as the engine stopped revving, fired three more times (shots 4–6). One-to-two seconds after that, Cantu also fired three times (shots 7–9).

Estevis was struck by at least two of the nine bullets. One hit his upper back and lodged in his spine, likely paralyzing him permanently. After the shooting stopped, the officers waited for ballistic shields before apprehending Estevis because they did not know whether he had a weapon. Emergency medical personnel later arrived and extracted Estevis from the vehicle.[2]

**B**

In 2022, Estevis sued Officers Cantu and Guajardo in federal district court for using excessive force in violation of the Fourth Amendment.[3] He also brought municipal liability claims against the City of Laredo. All

---

[2] The LPD subsequently disciplined Cantu for executing an unsanctioned maneuver to force Estevis off the road. Guajardo was disciplined for resuming the chase against orders. Neither officer was disciplined for the shooting. Estevis was later charged with aggravated assault on Border Patrol Agent Marco Solis and DPS Trooper Armando Baldazo for nearly striking them with his vehicle. Estevis pled guilty to the assault on Solis.

[3] To establish such a claim, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Rucker v. Marshall*, 119 F.4th 395, 403 (5th Cir. 2024) (quoting *Byrd v. Cornelius*, 52 F.4th 265, 270 (5th Cir. 2022)).

defendants moved for summary judgment, which the court granted in part. It dismissed the claims against the City and ruled the officers were protected by qualified immunity as to shots 1–3. As to shots 4–9, however, the court denied qualified immunity. The court reasoned as follows.

First, the court considered whether the officers used excessive force by examining the *Graham* factors: (1) the crime's severity; (2) whether the suspect posed an immediate threat to officers or others; and (3) whether the suspect was resisting arrest or trying to flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The court found the first and third factors favored the officers. As to the first, Estevis had engaged in "high-speed flight from officers," which is "no doubt a serious crime and places the public at significant risk of harm." As to the third, Estevis "was indeed attempting to evade arrest," and "[a]lthough he may have stopped revving the truck engine a second before shots 4–6, that was not a clear signal that he was giving up on his two-hour flight from law enforcement."

The second factor, the court found, favored the officers but only as to shots 1–3. Guajardo fired those shots "immediately" after Estevis rammed his cruiser and so "could reasonably have perceived that the truck presented a serious enough threat of harm." Not so for shots 4–9, though. By the time they were fired, Estevis had "driven away," was "stopped against a fence," and had ceased revving his engine "just before" the officers shot. "Most importantly," the court thought, the officers "advanced" before firing, no officer was in the truck's "immediate path," and Cantu testified in his deposition that the truck "ceased to be a threat" once the engine stopped

revving.[4] So, the court found that, for shots 4–9, the second factor "tilt[ed] . . . strongly against" the officers.

Based on this weighing of the *Graham* factors, the court ruled there was "[a] genuine dispute of material fact" whether shots 4–9 were "excessive in proportion to the threat [Estevis] presented." The court thought the officers had "more defensive options" available rather than shooting Estevis and should have taken a "safer approach." The court added that, once Estevis's truck was "stalled in the grass" and surrounded by police vehicles, "it presented less of a threat than it did before Officer Cantu drove it off the road."

Second, the court considered whether shots 4–9 violated clearly established law. The court found they did, based primarily on our decision in *Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009). That case involved an officer's shooting at a fleeing suspect's car that was, the suspect claimed, "three or four houses" down the street when the officer fired. *Id.* at 408. The court also cited what it believed to be a "robust consensus" of sister circuit authority denying officers qualified immunity when they "fired into the side or rear of cars that were moving away from them."

The officers timely appealed.

## II

We review the denial of qualified immunity *de novo. Rucker v. Marshall*, 119 F.4th 395, 399 (5th Cir. 2024) (citation omitted). To deny qualified

---

[4] The district court characterized Officer Cantu's deposition testimony as confirmation of the fact that Estevis's truck "ceased to be a threat once the engine stopped revving and the tires stopped spinning." This is not an accurate depiction of Cantu's testimony, however, which unambiguously explained that he fired shots 4–9 while believing that Estevis was still an immediate threat.

immunity, a district court must find that (1) "the alleged conduct amounts to a constitutional violation" and (2) "the right was clearly established at the time of the conduct." *Id.* at 400 (quoting *Buehler v. Dear*, 27 F.4th 969, 980 n.13 (5th Cir. 2022)).

While we are generally limited on interlocutory appeal to examining the materiality of fact disputes identified by the district court, *see Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020), we can review genuineness when available video shows a party's account of the facts is false. *Rucker*, 119 F.4th at 400 (citations omitted); *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

### III

The officers argue that, as to shots 4–9, the district court erred on both prongs of qualified immunity. Regardless of our thoughts on prong one, the court undoubtedly erred at prong two. So, we resolve the appeal on that ground. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts may resolve qualified immunity on either prong).

To satisfy prong two, squarely governing precedent had to place the excessiveness of shots 4–9 beyond debate. *See District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018); *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Kisela v. Hughes*, 584 U.S. 100, 104 (2018) ("Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.") (quoting *Mullenix*, 577 U.S. at 13). But the district court identified no such precedent, and Estevis fails to do any better on appeal.

The district court relied heavily on our decision in *Lytle*. *See Estevis v. City of Laredo*, 5:22-CV-22, 2024 WL 1313900, at *10 (S.D. Tex. Mar. 27, 2024) ("*Lytle* guides the Court's analysis."). *Lytle* denied qualified immunity

to an officer who shot at a fleeing car and accidentally killed a passenger. 560 F.3d at 407–08. But *Lytle* bears little resemblance to this case.

To begin with, there was no video in *Lytle* and so we had to accept the plaintiff's version of the facts. *Id.* at 409 ("We . . . adopt Lytle's version of the facts …."). In that telling, the officer briefly chased the suspect for about a half-mile before the suspect's car collided with a parked car. *Id.* at 407. The suspect began backing toward the officer but then changed direction and fled down the street. *Ibid.* The officer did not fire until the suspect had "made it three or four houses down the block." *Id.* at 409.

Our facts are dramatically different, as the multiple videos show. Estevis's truck, driven off the road and boxed in by police cars, suddenly reversed and rammed Guajardo's cruiser, triggering shots 1–3. Wheels smoking and engine revving, Estevis then lurched forward over the curb and into a fence. Shots 4–9 came seconds later as both officers advanced toward the still-running truck. Critically, all the shots were fired within ten seconds. During that brief time, it would have impossible for the officers to know for certain that the threat from Estevis's truck had ceased.

Even assuming shots 4–9 were excessive (which we do not decide), *Lytle* would have given the officers no guidance about whether to fire them. *See Ramirez v. Escajeda*, 44 F.4th 287, 294 (5th Cir. 2022) (explaining the second prong's focus is whether precedent gave officers fair notice their conduct was unlawful). The suspect in *Lytle* was fleeing down an open road and already "three or four houses" away when the officer fired. By contrast, Estevis was boxed in by police, had just rammed a police car and driven into a fence, and showed no signs of giving up. On these facts—which are plain from the videos—the officers had good reason to believe they were still under threat from an erratic suspect who seconds earlier had decided to use his truck as a 5,000-pound weapon. *See, e.g.*, *Morrow v. Meachum*, 917 F.3d 870,

876 (5th Cir. 2019) (because "excessive-force claims often turn on 'split-second decisions' to use lethal force . . . the law must be *so* clearly established that . . . every reasonable officer would know it immediately") (quoting *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009)).

As the officers point out, their situation is far closer to the one in *Plumhoff v. Rickard*, 572 U.S. 765 (2014), where police cornered a fleeing suspect in a parking lot. *Id.* at 769. The suspect spun into reverse and struck a police cruiser, and, tires spinning, tried to escape. *Id.* at 769–70. One officer fired three shots at the suspect's vehicle after it backed into one of the cruisers. *Id.* at 770. As the suspect sped away, officers fired twelve more times for a total of 15 shots within ten seconds, killing both driver and passenger. *Ibid.* Reversing the court of appeals, the Supreme Court held it was not "clearly established" that it was unconstitutional to shoot a fleeing driver "to protect those whom his flight might endanger." *Id.* at 779.

In any event, Estevis bore the burden to negate qualified immunity by showing shots 4–9 violated clearly established law. *See King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (when qualified immunity is asserted, the burden shifts to the plaintiff to "show that the defense is not available" (cleaned up)). He failed to do so. Not only is *Lytle* factually dissimilar but the closer case, *Plumhoff*, strongly suggests officers could use deadly force to apprehend a boxed-in suspect who uses his vehicle as a battering ram.

The district court read *Lytle* for the proposition that officers cannot shoot at a suspect who has "driven away from them" if the officers have "enough time" to realize the fleeing car was no longer a threat. That reads *Lytle* too generally. Prong two demands precedent that squarely governs the

No. 24-40277

particular circumstances facing officers.[5] As noted, the *Lytle* suspect had already "driven away" from officers for some distance on an open road. But Estevis had "driven away" only in the sense that, after ramming one officer's car, he then lurched in the opposite direction and slammed into a fence. The two cases are alike only in the most abstract sense. That is not the "specificity and granularity" demanded by prong two of the qualified immunity analysis. *Morrow*, 917 F.3d at 874–75.

We also disagree with the district court that a "robust consensus" of sister circuit cases showed the officers used excessive force. In some of the cited cases, the facts were in dispute—unlike here, where videos showed the continuing threat to the officers from multiple angles.[6] And two of the cases *granted* officers summary judgment on finding no violation of clearly established law.[7] So, we fail to see how a "consensus" of sister circuit authority could have forbidden beyond debate the officers' use of deadly force under these dangerous circumstances. *See Morrow*, 917 F.3d at 876 (clearly established law "comes from holdings, not dicta" and must "put the relevant question 'beyond debate'") (citations omitted).

_____

[5] *See Morrow*, 917 F.3d at 874–75 (in analyzing clearly established law, "we must frame the constitutional question with specificity and granularity"); *Mullenix*, 577 U.S. at 12 (second prong requires "the violative nature of particular conduct [to be] clearly established . . . in light of the specific context of the case, not as a broad general proposition" (cleaned up)).

[6] *Cf. Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 763 (2d Cir. 2003); *Abraham v. Raso*, 183 F.3d 279, 299 (3d Cir. 1999); *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005); *Orn v. City of Tacoma*, 949 F.3d 1167, 1174–77 (9th Cir. 2020); *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003).

[7] *See Waterman v. Batton*, 393 F.3d 471, 482 (4th Cir. 2005); *Cordova v. Aragon*, 569 F.3d 1183, 1190 (10th Cir. 2009).

No. 24-40277

In sum, the officers did not violate clearly established law by firing shots 4–9 under the circumstances shown by the videos.

## IV

We REVERSE the district court's judgment and RENDER judgment granting Officer Guajardo and Officer Cantu qualified immunity for shots 4–9.